# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | **CASE NO.:** |
| | **1:21-CR-00231-TCB-CMS** |
| JACK FISHER, JAMES SINNOTT, YEKATERINA LOPUHINA A/K/A "EKATERINA LOPUKHINA" A/K/A "KATE JOY," WALTER DOUGLAS ROBERTS II A/K/A "TERRY ROBERTS," CLAY MICHAEL WEIBEL A/K/A "CLAYTON WEIBEL," HERBERT E. LEWIS, AND VICTOR SMITH, | |
| Defendants. | |

## DEFENDANT CLAY WEIBEL'S MOTION TO SEVER TRIAL
## (WITH SUPPORTING MEMORANDUM OF LAW)

## Table of Contents

I. The Charged Conduct ..................................................................................1

  A.  Mr. Weibel's Limited Acts in Limited Time ....................................................2

  B.  The Charges Against Mr. Weibel ....................................................................5

II. Argument ...............................................................................................6

  A.  Applicable Legal Standard for Severing Trial .................................................7

  B.  Prejudice—The First Prong of the Two-Pronged Test....................................8

  C.  Denial of a Constitutional Right....................................................................10

    (i)   First *Barker* Factor—Length of Delay .....................................................11

    (ii)  Second *Barker* Factor—Reason for Delay ..............................................12

    (iii) Third *Barker* Factor—Defendant's Assertion of His Right ..................14

    (iv)  Fourth *Barker* Factor—Actual Prejudice from Delay ...........................16

  D.  "Reliable Judgment" Exception to Joint Trial.................................................18

    (i)   Mr. Weibel's Unique Affirmative Defense ...............................................19

    (ii)  Mr. Weibel's Qualitatively Different Evidence .......................................20

  E.  Alternative Speedy Trial Act Argument .........................................................23

III. Conclusion ...........................................................................................25

# Table of Authorities

## Cases

*Barker v. Wingo*, 407 U.S. 514 (1972) ............................................................ passim

*Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) .................22

*Cheek v. United States*, 498 U.S. 192 (1991) ..........................................................20

*Doggett v. United States*, 505 U.S. 647 (1992)................................................ 11, 18

*Henderson v. United States*, 476 U.S. 321 (1986)....................................................24

*Kloper v. North Carolina*, 386 U.S. 213 (1967).......................................................10

*United States v. Acosta*, 807 F.Supp.2d 1154 (N.D. Ga. 2011)...........................8, 10

*United States v. Adkinson*, 158 F.3d 1147 (11th Cir. 1998) .....................................6

*United States v. Blankenship*, 382 F.3d 1110 (11th Cir. 2004) ............... 7, 9, 10, 18

*United States v. Cassano*, 132 F.3d 646 (11th Cir. 1998) .......................................23

*United States v. Chavez*, 584 F.3d 1354 (11th Cir. 2009) .........................................8

*United States v. Cobb*, 185 F.3d 1193 (11th Cir. 1999) ..........................................10

*United States v. Hall*, 181 F.3d 1057 (9th Cir. 1999)..............................................25

*United States v. Hill*, 643 F.3d 807 (11th Cir. 2011)...............................................13

*United States v. Ingram*, 446 F.3d 1332 (11th Cir. 2006) .................... 11, 14, 15, 16

*United States v. Klein*, 247 F.2d 908 (2d Cir. 1957),
*cert. denied*, 355 U.S. 924 (1958)........................................................... 6, 8, 19, 20

*United States v. Kottwitz*, 614 F.3d 1241 (11th Cir. 2010),
*opinion withdrawn in part on other grounds on denial of reh'g*,
627 F.3d 1383 (11th Cir. 2010) ..................................................20

*United States v. Maxwell*, 579 F.3d 1282 (11th Cir. 2009) ....................................19

*United States v. Messer*, 197 F.3d 330 (9th Cir. 1999) ...........................................25

*United States v. Morrison*, 833 F.3d 491 (5th Cir. 2016)........................................21

*United States v. Noriega*, 746 F. Supp. 1548 (S.D. Fla. 1990).................................9

*United States v. Phillips*, 482 F.2d 191 (8th Cir. 1973)..........................................10

*United States v. Schlei*, 122 F.3d 944 (11th Cir. 1997) ............................................8

*United States v. Severino*, 786 Fed. App'x 881 (11th Cir. 2019)..........................20

*United States v. Taylor*, 306 Fed. App'x 492 (11th Cir. 2009) ..............................15

*United States v. Varella*, 692 F.2d 1352 (11th Cir. 1982)......................................24

*United States v. Villarreal*, 613 F.3d 1344 (11th Cir. 2010) ............... 11, 13, 14, 16

*United States v. Weaver*, 905 F.2d 1466 (11th Cir. 1990).......................................13

*United States v. Wolfson*, 573 F.2d 216 (5th Cir. 1978).........................................22

*Zafiro v. United States*, 506 U.S. 534 (1993) ...........................................................7

## Constitutional Provisions

U.S. Const. amend. VI ............................................................... 1, 11, 25

## Statutes

18 U.S.C. § 2 ..................................................................................8

18 U.S.C. § 371 ...........................................................................1, 6

18 U.S.C. § 1343 .............................................................................8

18 U.S.C. § 1349 .........................................................................1, 6

18 U.S.C. § 1957 .............................................................................8

18 U.S.C. § 3161 *et seq*, Speedy Trial Act ............................... 1, 7, 23, 24

26 U.S.C. § 7206 ..................................................................... passim

## Regulations

26 C.F.R. § 1.6694-1 ......................................................................20

31 C.F.R. § 10.34 ...........................................................................20

## Rules

Fed. R. Crim. P. 8 .......................................................................7, 13

Fed. R. Crim. P. 14 ................................................................... 1, 7, 23

## Other Authority

Guide Note 4—Reliance on Rep. Prepared by Others
(Appraisal Inst. 2017) ...................................................................22

Uniform Standards of Professional Appraisal Practice (USPAP)
(Appraisal Found. 2016-2017).......................................................21

W. Shenkel, *Modern Real Estate Principles* (1st ed. 1977) ....................17

W. Shenkel, *Real Estate Finance* (1st ed. 1976) ..................................17

COMES NOW the defendant CLAY WEIBEL, by and through undersigned counsel, and hereby invokes his rights to a speedy trial under both the Sixth Amendment and the Speedy Trial Act, 18 U.S.C. § 3161 *et seq*. To preserve these rights, Mr. Weibel demands a speedy trial, and moves this Court under Rule 14 of the Federal Rules of Criminal Procedure to sever his trial from the trial of his co-defendants. The government opposes Mr. Weibel's motion for severance, even though a joint trial would force a lengthy delay and thereby deprive Mr. Weibel of his speedy trial right. In support of severance, Mr. Weibel states:

## I. The Charged Conduct

The government filed a first superseding indictment February 24, 2022 (ECF 28), charging seven defendants with a total of 135 counts, with only 14 of those 135 counts constituting charges against Mr. Weibel. Count One of the indictment charges Mr. Weibel with conspiring with all other six co-defendants to defraud the United States in violation of 18 U.S.C. § 371. Count Two of the indictment charges Mr. Weibel with conspiring with four of the co-defendants to commit wire fraud in violation of 18 U.S.C. § 1349. And Counts Fifty-Two through Sixty-Three of the indictment charge Mr. Weibel of, by himself, willfully aiding and assisting the filing of false tax returns in violation of 26 U.S.C. § 7206(2). Thus, other than the two conspiracy counts, Mr. Weibel's charged conduct does not implicate the other co-defendants. Mr. Weibel was arraigned on March 9, 2022. He

entered a plea of not guilty to all 14 counts charged against him (ECF 69). His case was assigned to Magistrate Judge Catherine M. Salinas for pretrial matters and to District Judge Timothy Batten for trial.

## A.    Mr. Weibel's Limited Acts in Limited Time

The government alleges an elaborate tax shelter scheme, consisting of raising and directing investments in dozens of partnership entities, which in turn, yielded purportedly unwarranted tax deductions to the investors on account of "exaggerated" valuations of conservation easements placed on land acquired by the partnerships. Mr. Weibel's charged conduct, however, is limited to preparing allegedly fraudulent and inflated appraisals for 12 such conservation easements. Similarly, even though this alleged scheme supposedly spanned the years 2002 through 2020, Mr. Weibel's charged involvement is limited to less than four years of that period.

The first superseding indictment alleges that from approximately 2002 through 2020, defendant JACK FISHER (FISHER) organized, promoted, and sold tax shelters that "facilitated high-income taxpayers in claiming unwarranted and inflated charitable contribution tax deductions in connection with the donation of a conservation easement over land" (ECF 28, at 2). The indictment notes that "[a] conservation easement was a legal agreement through which a landowner and another party agreed to permanently restrict the development and use of the land with the purpose of achieving certain conservation and preservation goals in

2

perpetuity" (ECF 28, at 6).

The indictment acknowledges that: during all relevant times, the Internal Revenue "Code and associated regulations allowed taxpayers to take a deduction on their tax return for any 'charitable contribution' made within that tax year"; "[t]he amount of the deduction generally equaled the fair market value of the contributed property on the date of the contribution"; and if "[p]roperly structured, a conservation easement" would have been eligible for such a deduction (ECF 28, at 6). The indictment adds that "[t]o qualify for this specific charitable deduction, the Code and associated regulations set out specific requirements, including, among other things, that the value of a conservation easement be determined by a qualified appraisal prepared no earlier than 60 days before the date of contribution and no later than the due date of the tax return on which the charitable contribution deduction was first claimed" (ECF 28, at 6).

According to the first superseding indictment, FISHER "organized and promoted" partnership entities that "placed conservation easements over land" and then, along with co-defendants HERBERT E. LEWIS and VICTOR SMITH, and others, "promoted and sold units" in these entities to participants, "and in exchange, the participants received a tax deduction" (ECF 28, at 7). Defendants FISHER, JAMES SINNOTT (SINNOTT), and YEKATERINA LOPUHINA (JOY), and others, "promoted" these entities as "'tax advantaged real estate investments'"

3

which, the indictment alleges, "[in] reality . . . were illegal tax shelters that allowed taxpayers to buy tax deductions at the end of a tax year—and sometimes even after the tax year ended—to illegally shelter their income from taxes for that year" (ECF 28, at 7-8).

The only role that the government ascribes to Mr. Weibel in this entire endeavor is in appraising the fair market value of 12 of the conservation easements at issue. Mr. Weibel "was a licensed appraiser based in or around Atlanta, Georgia" while defendant WALTER DOUGLAS ROBERTS II (ROBERTS) "was a licensed appraiser in Hendersonville, North Carolina" (ECF 28, at 3). The first superseding indictment alleges that "[a]s part of the scheme, FISHER and SINNOTT, hired an appraiser, typically ROBERTS or WEIBEL, to generate fraudulent and inflated appraisals of the conservation easements or the land" (ECF 28, at 8).

According to the first superseding indictment, "[o]n August 11, 2015, FISHER sent WEIBEL an introductory email suggesting he would be interested in hiring WEIBEL as an appraiser" (ECF 28, at 40). The indictment alleges that Mr. Weibel finalized and submitted his first appraisal for a partnership entity sponsored by FISHER on January 4, 2016 (ECF 28, at 41). The indictment then proceeds to detail 11 other appraisals that Mr. Weibel completed for such FISHER-sponsored entities, with the last one being completed no later than February 27, 2019 (ECF 28, at 41-57). Thus, from his first alleged encounter with any of the co-defendants until

4

his last claimed engagement, Mr. Weibel's involvement lasted about three and a half of the 18 years of the total charged conduct.

**B.    The Charges Against Mr. Weibel**

The government contends that Mr. Weibel closely coordinated with FISHER and some of the other co-defendants in arriving at his final appraised values for the conservation easements, alleging, for instance, that "FISHER, SINNOTT, and JOY and other co-conspirators routinely provided" Mr. Weibel "with spreadsheets that contained information purportedly used to value the conservation easements" (ECF 28, at 18). Consequently, the indictment charges that, instead of preparing independent appraisals, "Mr. Weibel generate[d] fraudulent appraisals of the conservation easements needed to achieve the tax deduction ratio promised to the participants" (ECF 28, at 17). Further, because these appraisals were included in the entities' tax returns, Mr. Weibel, and other co-defendants, "caused to be prepared and filed" false tax returns for the investment partnerships (ECF 28, at 44, 45, 50, 51, 54, 55, 60, 61). Even though the tax returns for two of these partnerships were filed in September 2019, much later than Mr. Weibel had completed the last of his appraisals for a FISHER-sponsored entity, the indictment doesn't suggest, let alone allege, that Mr. Weibel undertook any affirmative acts other than finalizing and submitting his appraisals and signing the associated tax forms.

Based on the foregoing allegations, the first superseding indictment charges

Mr. Weibel with: (1) one count of violating 18 U.S.C. § 371 by conspiring with all co-defendants to defraud the United States, a so-called *Klein* conspiracy;[1] (2) one count of violating 18 U.S.C. § 1349 by conspiring with co-defendants FISHER, JOY, SINNOTT, and ROBERTS to commit wire fraud; and (3) 12 counts of violating 26 U.S.C. § 7206(2) by willfully aiding and assisting the filing of false returns (ECF 28, at 8, 64, 73-74).

## II. Argument

Mr. Weibel is entitled, both under the Constitution and by statute, to a speedy trial. A joint trial of all seven co-defendants, however, will be anything but speedy. Any such joint trial will necessarily decide all 135 counts of the indictment and will therefore entail an enormous amount of evidence, featuring complex details of convoluted transactions over almost two decades, only a tiny fraction of any of which would be even remotely related to Mr. Weibel. Already, the voluminous discovery being produced by the government has prompted some of the other co-defendants to move for and obtain continuances on pretrial deadlines. Those extensions of deadlines are bound to lengthen, and a delay of well over a year in the conduct of any joint trial is foreordained. At that stage, this Court would have to

---

[1] When such a conspiracy is specifically focused on defrauding the IRS in its efforts to assess and collect taxes, it is commonly referred to as a *Klein* conspiracy, after the first reported decision to recognize it, *United States v. Klein*, 247 F.2d 908 (2d Cir. 1957), *cert. denied*, 355 U.S. 924 (1958). *See United States v. Adkinson*, 158 F.3d 1147, 1154 (11th Cir. 1998).

confront Mr. Weibel's sole remaining remedy for the resulting deprivation of his speedy trial right—a motion to dismiss. Instead, Mr. Weibel is moving the Court now, and asking for the much less drastic remedy of severance. In the alternative, Mr. Weibel asks that any extensions granted the other defendants not be attributed to him for determining the time elapsed until trial under the Speedy Trial Act.

## A.     Applicable Legal Standard for Severing Trial

An indictment "may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). Notwithstanding such joinder, however, a court may "order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires" if joinder "appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a).

The Supreme Court in *Zafiro v. United States*, 506 U.S. 534, 539-40 (1993), and, in turn, the Eleventh Circuit in *United States v. Blankenship*, 382 F.3d 1110, 1122-23 (11th Cir. 2004), have outlined when a district court should grant a defendant severance under Rule 14(a) and try him separately from co-defendants with whom he had previously properly been joined under Rule 8(b). As this Court itself explained, a two-pronged test governs setting aside the presumption of a joint trial for defendants joined in an indictment. At the first prong, a defendant must "show specific prejudice," and at the second prong, "a serious risk that a joint trial

7

would [either] compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Acosta*, 807 F.Supp.2d 1154, 1270 (N.D. Ga. 2011) (quotation marks omitted). As discussed below, both prongs are easily satisfied here.

## B.    Prejudice—The First Prong of the Two-Pronged Test

A joint trial will improperly link Mr. Weibel to incriminating evidence against the co-defendants, render his affirmative defense antagonistic to the co-defendants' likely defenses, and deny him exculpatory statements from them, all resulting in "specific and compelling prejudice to the conduct of his defense." *United States v. Schlei*, 122 F.3d 944, 984 (11th Cir. 1997); *see also United States v. Chavez*, 584 F.3d 1354, 1360 & n.5 (11th Cir. 2009) (collecting cases).

Mr. Weibel faces inevitable prejudice from the sheer volume of charges in the indictment, only a small fraction of which relate to him, and the almost-two-decades-long period spanned by the charged conduct, again only a brief duration of which allegedly involves him. Pointedly, compared to the 14 counts with which Mr. Weibel is charged, the other co-defendants collectively face an additional 121 counts, including charges of wire fraud in violation of 18 U.S.C. §§ 1343 and 2, subscribing to a false tax return in violation of 26 U.S.C. § 7206(1) and 18 U.S.C. § 2, and money laundering in violation of 18 U.S.C. § 1957 and § 2. Further, the *Klein* conspiracy allegedly ran "[f]rom at least in or about 2002 through at least 2020" (ECF 28, at 8),

and the wire fraud conspiracy allegedly lasted "[f]rom at least in or about 2013 through at least in or about 2019" (ECF 28, at 64). Mr. Weibel is charged to have been a co-conspirator in each, but as stated above, the indictment bookends Mr. Weibel's entire charged conduct over a much shorter time span—from August 11, 2015, to February 27, 2019 (ECF 28, at 40, 41-57).

A joint trial will prejudice Mr. Weibel by tying him to the enormous breadth and gravity of the charges against his co-defendants. The "quantity of evidence" could "spill over . . . and result in convictions based largely on proof unconnected to the specific acts" Mr. Weibel is alleged to have committed. *United States v. Noriega*, 746 F. Supp. 1548, 1553 (S.D. Fla. 1990) (collecting cases).

Moreover, as set forth in part II.D.(i) below, at trial, Mr. Weibel will invoke the affirmative defense of good faith, and specifically, of having reasonably relied in good faith on information supplied by one or more of the co-defendants—a defense necessarily antagonistic to these co-defendants' defenses. While "mutually antagonistic defenses are not prejudicial *per se*," *Blankenship*, 382 F.3d at 1122 (quotation marks and alteration omitted), prejudice here will arise from the fact that the mere assertion of Mr. Weibel's good-faith defense will be inculpatory with respect to these co-defendants by identifying them as the source of what may turn out to have been false information supplied with an intent to mislead.

Finally, a joint trial here would foreclose the opportunity of exculpatory

9

statements from any of the co-defendants, who will surely invoke their Fifth Amendment privilege against self-incrimination. *See United States v. Cobb*, 185 F.3d 1193 (11th Cir. 1999) (requiring severance if a joint trial would effectively deny access to exculpatory testimony by a co-defendant).

With the prejudice prong satisfied, the analysis must proceed to the second prong: testing for denial of a constitutional right or the jury's inability to make a reliable judgment.

## C.   Denial of a Constitutional Right

Given prejudice, "[t]he first scenario for mandatory severance . . . exists . . . where a joint trial leads to the denial of a constitutional right." *Blankenship*, 382 F.3d at 1123. Courts, including this one, have recognized the right to a speedy trial as one of the specific trial rights that must be protected against the risk of compromise by a joint trial. *See, e.g.*, *Acosta*, 807 F.Supp.2d at 1270; *see also United States v. Phillips*, 482 F.2d 191, 195 (8th Cir. 1973) (recognizing that "a defendant's right to a speedy trial may be impaired, under certain circumstances, by the fact that his co[-]defendant has requested or consented to a continuance or series of continuances").

The Sixth Amendment guarantees Mr. Weibel a speedy trial, a right "as fundamental as any of the [other] rights secured by the Sixth Amendment." *Kloper v. North Carolina*, 386 U.S. 213, 223 (1967). Determining whether this right to a

speedy trial has been violated entails a balancing test in which the respective actions of the prosecution and defense are weighed across four factors: (1) length of the delay; (2) reason for the delay; (3) the defendant's assertion of the right; and (4) prejudice to the defendant from the delay. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The fourth *Barker* factor, however, can weigh in the defendant's favor even in the absence of actual prejudice. *See Doggett v. United States*, 505 U.S. 647, 651-52, 655 (1992) (stating that "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove, or for that matter, identify").

Although none of these four *Barker* factors is either necessary or sufficient to the finding of a deprivation of the right of a speedy trial, they must all be considered together with other circumstances that may be relevant. *Barker*, 407 U.S. at 530.

### (i)      First Barker Factor—Length of Delay

The first *Barker* factor, the length of delay, "serves as a threshold inquiry that the defendant must satisfy" for the Court to proceed with the balancing test. *United States v. Villarreal*, 613 F.3d 1344, 1350 (11th Cir. 2010). "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. In the Eleventh Circuit "[d]elays exceeding one year are generally found to be 'presumptively prejudicial.'" *United States v. Ingram*, 446 F.3d 1332, 1336 (11th Cir. 2006) (quoting *Doggett*, 505 U.S. at 652 n.1).

11

Discovery in this case will be immense in volume. On March 22, 2022 (almost two weeks after arraignment), the government produced over three million pages of discovery to Mr. Weibel. While Mr. Weibel does not know exactly how much discovery has so far been produced to the other defendants, based on the number and nature of charges against them, their discovery is certain to be even more extensive. The government's investigation, and therefore the accompanying discovery, remains ongoing. Mr. Weibel is eager, prepared, and ready to go to trial. But he justifiably foresees the other defendants continually seeking additional time to ingest the significant discovery being produced to them.

Two of Mr. Weibel's co-defendants have already moved to continue pretrial deadlines on the grounds that additional time is needed to examine the extensive discovery (ECF 73, 80). While Mr. Weibel has objected to these continuances, the government has not, and the Court has granted them. These continuances apply with respect to defendants other than Mr. Weibel only. But if Mr. Weibel is forced into a joint trial with the other co-defendants, his objections will be unavailing, and he, along with the others, will have to wait to be tried. Given the extent of discovery being produced by the government to the other co-defendants, there is no question that this delay will exceed well over a year.

*(ii)    Second Barker Factor—Reason for Delay*
Because the threshold inquiry is satisfied, the Court must consider the second

and third *Barker* factors. With respect to the second factor, the reason for the delay, "[t]he government bears the burden." *Villarreal*, 613 F.3d at 1350. The weight allocated to this factor depends on the actual causes underlying the delay. Whereas a deliberate attempt to delay the trial to hamper the defense weighs heavily against the government, neutral reasons such as overcrowded courts weigh less so. Nevertheless, these reasons are taken into consideration because the ultimate responsibility for such circumstances rests with the government rather than the defendant. *Ibid*.

Here, the impending delay in trial can only be attributed to the government's intent to derive maximal tactical advantage from trying all seven co-defendants together. Arguably, a joint trial would be consistent with the purposes of a Rule 8(b) joinder, *viz.*, promoting judicial economy and efficiency. *United States v. Weaver*, 905 F.2d 1466, 1476 (11th Cir. 1990). But given the large number of defendants, this Court would no doubt have to "work[] hard to keep the [joint] trial from getting out of control." *United States v. Hill*, 643 F.3d 807, 827 (11th Cir. 2011). The multi-defendant trial in *Hill* saw this very Court resorting to, among other things, limiting opening statements and cross-examinations, urging all sides "to stipulate to the authenticity of various records," and "in the presence of the jury encourag[ing] both the prosecution and the defense to 'move on.'" *Ibid*. Despite such extraordinary measures, a joint trial may well consume more time and resources than separate

trials. In short, even the judicial economy and efficiency benefits of a joint trial might be difficult to realize given the multiplicity of defendants and charges. Thus, this factor, even if apparently neutral on its face, must weigh against the government because the government, and not Mr. Weibel, is the one choosing to incur the delay necessitated by a joint trial.

Mr. Weibel's right to a speedy trial is enshrined in the Constitution. His liberty interests greatly outweigh any policy justifications for a joint trial. If this Court were to deny severance and require a joint trial, a lengthy delay and the resulting deprivation of Mr. Weibel's constitutional right to a speedy trial will inevitably come to pass. Mr. Weibel's remedy at that stage would be to seek a dismissal of the charges against him. *See, e.g.*, *Villarreal*, 613 F.3d at 1348; *Ingram*, 446 F.3d at 1335. To preempt that outcome, Mr. Weibel now—at the very outset—seeks the much less drastic remedy of severance and a separate and immediate trial.

### (iii)   Third *Barker* Factor—*Defendant's Assertion of His Right*

The third *Barker* factor, whether the defendant asserted his right to a speedy trial, is "entitled to strong evidentiary weight in determining whether a defendant is being deprived of the right." *Barker*, 407 U.S. at 531-32. "[A] timely demand for a speedy trial often supports an inference that the defendant was not at fault for the delay and that the delay prejudiced the defendant." *Villarreal*, 613 F.3d at 1354.

The weight attached to a defendant's assertion of his speedy trial right will differ with the circumstances of his demand. *Barker*, 407 U.S. at 528-29 (contrasting frequent and forceful demands with a "purely pro forma objection"). The Eleventh Circuit heavily weighs against the government a defendant's assertion of his right to a speedy trial if such an assertion is made promptly after the defendant has been made aware of the indictment against him. *Ingram*, 446 F.3d at 1338; *United States v. Taylor*, 306 Fed. App'x 492, 493 (11th Cir. 2009).

Mr. Weibel could not have asserted his right any sooner, given that he was arraigned on March 9, 2022. And his intent to proceed to trial couldn't be more sincere. He is waiving all other pretrial motions, lest they delay his trial any longer. Also, in a concurrent filing, Mr. Weibel has waived his right to trial by jury. The government, on the other hand, is ensuring delay. It was the government that chose whether and when to indict Mr. Weibel. And it did so without the benefit of a pre-indictment conference despite Mr. Weibel's request for one. The government should be prepared to proceed to trial now. Instead, by opposing severance, insisting on a joint trial, and declining to object to continuances sought by the other defendants, the government is precluding a speedy trial. And doing so by effectively hiding behind the very co-defendants that the government itself chose to join with Mr. Weibel in the indictment.

15

*(iv)    Fourth Barker Factor—Actual Prejudice from Delay*

If, as here, "all three of these factors weigh heavily against the [g]overnment, the defendant need not show actual prejudice (the fourth factor) to succeed in showing a violation of his right to a speedy trial." *Ingram*, 446 F.3d at 1336. If, on the other hand, "the first three factors do not weigh heavily against the government, the defendant generally must demonstrate actual prejudice to succeed on his speedy trial claim." *Villarreal*, 613 F.3d at 1355.

The analysis above has amply demonstrated the first three factors weighing heavily against the government. Even so, Mr. Weibel can readily show the significant prejudice he is in fact suffering. This Court should "assess the prejudice suffered by the defendant in light of the three interests of the defendant the speedy trial right was intended to protect": (1) preventing oppressive pretrial incarceration; (2) minimizing the defendant's anxiety and concern; and (3) limiting the possibility that his defense will be impaired. *Ibid*. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532.

Mr. Weibel has suffered and will continue to suffer substantial prejudice each day that his trial does not take place. That is one additional day that he remains under the cloud of the indictment. Mr. Weibel is an appraiser with over forty years of experience. He earned a bachelor's degree in Business Administration in Real Estate

and Urban Development from the University of Georgia in 1975 and completed significant graduate level coursework. During his graduate studies, Mr. Weibel taught appraisal concepts to undergraduate students—including the present value methods at issue here. He served as a graduate assistant to Dr. William M. Shenkel at the University of Georgia and assisted him in the preparation of two textbooks. *See* W. Shenkel, *Real Estate Finance* (1st ed. 1976); W. Shenkel, *Modern Real Estate Principles* (1st ed. 1977).

Mr. Weibel earned the Member Appraisal Institute (MAI) designation from the Appraisal Institute in 1987. The MAI designation generally denotes doctorate-level experience and education in commercial real estate appraisal. Mr. Weibel later served on the Admissions Committee for the Appraisal Institute, helping determine whether an applicant had met the rigorous requirements for the "MAI" designation. From 1998 to 2001, he sat on the Appraisal Institute's National Admissions Appeals Board, which reviewed appeals from candidates denied the MAI designation.

Ever since he was indicted, Mr. Weibel's flow of business has dried up. He has received oral and written notifications from long-standing clients that they will no longer use his services. The Appraisal Institute has initiated inquiries in connection with the appraisals at issue in this case. All of this is causing a drain on Mr. Weibel's financial resources and significantly adversely affecting his ability to put up a defense. Further, the longer it takes to conduct a trial, the less likely it will

17

be that Mr. Weibel will be able to make available witnesses with good enough recall of the relevant facts that would corroborate his account of events. The delay is thus likely to "compromise[] the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Doggett*, 505 U.S. at 655.

In addition to impairing his defense, the delay is and will continue to subject Mr. Weibel to mental anguish. While he remains free on bond pending trial, that alone cannot begin to undo the delay's damaging impact on his financial and mental well-being. Thus, Mr. Weibel has demonstrated actual and considerable present and ongoing prejudice from a delay of his trial.

Because all four *Barker* factors weigh heavily against the government, this Court must sever Mr. Weibel's trial from that of his co-defendants and protect his constitutional right to a speedy trial from the delay that will inexorably ensue in the event of a joint trial.

## D.    "Reliable Judgment" Exception to Joint Trial

Even if the Court were to disregard the threat to Mr. Weibel's constitutional rights to a speedy trial from continuing with joinder, severance is still called for here on grounds of the jury being unable to make a reliable judgment about his guilt or innocence following a joint trial. Severance is mandated in those cases "in which the sheer number of defendants and charges with different standards of proof and culpability, along with the massive volume of evidence, makes it nearly impossible

for a jury to juggle everything properly and assess the guilt or innocence of each defendant independently." *Blankenship*, 382 F.3d at 1124.

Discovery in this case has already exceeded several million pages, and it is clear that the cumulative evidence at trial with respect to all seven co-defendants will be voluminous. Moreover, Mr. Weibel will be subject to a different level of culpability than all other co-defendants, with the possible exception of ROBERTS, the other appraiser charged in the indictment.

### (i)   Mr. Weibel's Unique Affirmative Defense

As an initial matter, demonstrating that each of Mr. Weibel's 12 appraisals of conservation easements at issue here was a "good-faith" appraisal would be a complete defense to all charges against him. The only fraudulent activity that Mr. Weibel is charged with is the "generat[ion] [of] fraudulent appraisals of the conservation easements needed to achieve the tax deduction ratio promised to the participants" (ECF 28, at 17). Accordingly, a conservation easement appraisal that demonstrates good-faith compliance with applicable regulatory and professional standards would bar a conviction for conspiracy to commit wire fraud. *See, e.g., United States v. Maxwell*, 579 F.3d 1282, 1304 (11th Cir. 2009) (because "good faith is a complete defense" to wire fraud conspiracy charges, jury may consider whether a government contractor "reasonably believed" that his actions conformed to relevant local regulations, ordinances, and common industry practice).

Moreover, a good-faith appraisal would *a fortiori* defeat the *Klein* conspiracy charge, a conviction for which requires, at least in the Eleventh Circuit, satisfying the heightened willfulness standard for tax crimes enunciated in *Cheek v. United States*, 498 U.S. 192, 201 (1991), as the "voluntary, intentional violation of a known legal duty." *See United States v. Kottwitz*, 614 F.3d 1241, 1265 (11th Cir. 2010), *opinion withdrawn in part on other grounds on denial of reh'g*, 627 F.3d 1383 (11th Cir. 2010) (requiring "specific intent or 'willful' conduct" for a *Klein* conspiracy conviction). A good-faith appraisal would similarly refute the *Cheek* willfulness required for willfully aiding and abetting the filing of false tax returns. *See id.* at 1258; *United States v. Severino*, 786 Fed. App'x 881, 886 (11th Cir. 2019).

### (ii)    *Mr. Weibel's Qualitatively Different Evidence*

Establishing his conservation easement appraisals as good-faith appraisals would require Mr. Weibel to show that he attempted to adhere to regulatory guidance issued by the Treasury Department and the IRS. Such guidance would include, among other provisions, section 10.34(d) of the Treasury's Circular 230, which governs practice before the department. The provision, codified at 31 C.F.R. § 10.34(d), addresses "[a] practitioner advising a client to take a position on a tax return," which phrase would include an appraiser preparing an appraisal supporting a deduction claimed on a return. This guidance assures such a practitioner that in preparing an appraisal or similar document, he "generally may rely in good faith

without verification upon information furnished by the client." A near-identical provision appears in Treasury regulations, codified at 26 C.F.R. § 1.6694-1(e), clarifying that for purposes of civil penalties imposed on tax return preparers, in invoking the affirmative defense of "reasonable cause and good faith," such a preparer "generally may rely in good faith without verification upon information furnished by the taxpayer."[2]

Mr. Weibel would also introduce into evidence professional standards of conduct and related guidance promulgated by the Appraisal Foundation through its Uniform Standards of Professional Appraisal Practice (USPAP) and Appraisal Institute standards, guidance, and USPAP interpretation, disseminated to appraisers at continuing education courses and through publication. For example, a USPAP comment to its Standards Rule 2-3 provides that an appraiser can and should rely on the work of others where the appraiser has a "reasonable basis for believing that those individuals performing the work are competent" and "has no reason to doubt that the work of those individuals is credible." *See, e.g.,* USPAP at 28 (Appraisal Found. 2016-2017).

---

[2] In a prosecution for willfully aiding and abetting the filing of a false return in violation of 26 U.S.C. § 7206(2), a district court should allow any such civil regulation into evidence to show good faith and further should allow the regulation to be discussed during closing argument. *See United States v. Morrison*, 833 F.3d 491, 509 (5th Cir. 2016).

The Appraisal Institute has provided additional guidance, interpreting USPAP Standards Rule 2-3 as allowing appraisers to rely on the work of others, including reports prepared by licensed or certified non-real estate appraisal professionals, other non-real estate professionals, clients, and others relating to topics such as zoning opinions, engineering services, financial statements, highest and best use studies, and cost studies. Guide Note 4—Reliance on Rep. Prepared by Others at 2 (Appraisal Inst. 2017). According to the Appraisal Institute, "[a]ppraisers often rely, at least in part, on reports prepared by others. Reliance on the reports of others generally increases with the complexity of the appraisal problem." *Id.* at 1.

Finally, whether Mr. Weibel's conservation easement appraisals constituted good-faith appraisals could be the subject of expert testimony. In a prosecution in the Southern District of Florida of an appraiser charged under 26 U.S.C. § 7206(2) with supplying taxpayers with inflated appraisals supporting charitable deductions of donated yachts, the government and the defense "called expert witnesses," and on appeal, the Fifth Circuit summarized and passed upon their respective opinion testimonies. *United States v. Wolfson*, 573 F.2d 216, 219 (5th Cir. 1978).[3]

Such evidence that Mr. Weibel would seek to introduce, comprising regulatory guidance and professional standards and expert testimony, would be

---

[3] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*) (adopting as binding precedent in the newly formed Eleventh Circuit all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

22

qualitatively different in nature from that necessitated by the fact-intensive defense of the charges brought against the co-defendants alleged to have solicited investment into the partnership entities and managed those entities' acquisition of land and granting of conservation easements. Given this schism in the type of documentary and testimony evidence probative of the charges against Mr. Weibel, on the one hand, and the remaining defendants, on the other, it is readily apparent that the jury will be "unable to sift through the evidence and make an individualized determination as to each defendant." *United States v. Cassano*, 132 F.3d 646, 651 (11th Cir. 1998) (quotation marks and citation omitted). Accordingly, the "reliable judgment" exception to the rule of joint trial of co-defendants joined in an indictment should apply, and severance under Rule 14(a) should be granted.

## E.   Alternative Speedy Trial Act Argument

If this Court declines to sever Mr. Weibel's trial, then in the alternative, his statutory rights to a speedy trial must be protected by not attributing to him periods excluded from any of the co-defendant's speedy trial clock.

In addition to the Sixth Amendment, the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, provides that a criminal defendant's trial must begin within 70 days of the filing of the information or indictment, or the date on which the defendant appeared in the district where charges are pending, whichever is later. 18 U.S.C. § 3161(c)(1). The Act also excludes certain periods of time from the computation of the 70 days.

*See* 18 U.S.C. § 3161(h). These exempted periods include any continuance based on "findings that the ends of justice served by taking such action outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). In granting such a continuance, the court may consider, among other factors, whether the failure to grant the continuance "would deny counsel for the defendant . . . reasonable time necessary for effective preparation, taking into account the exercise of due diligence." 18 U.S.C. § 3161(h)(7)(B)(iv).

The Act also excludes from the 70-day period "[a] reasonable period of delay when the defendant is joined for trial with a co[-]defendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(6). As a result, time excluded for one defendant is also excluded for all defendants joined in his case, provided the exclusion is reasonable. *See Henderson v. United States*, 476 U.S. 321, 326-27 (1986) (citing current § 3161(h)(6) as evidence that "Congress clearly knew how to limit an exclusion" to reasonableness).

The Eleventh Circuit does not appear to have spelled out how to conduct a reasonableness analysis to determine whether continuances granted to co-defendants under § 3161(h)(7)(A) should be excluded from the 70-day period of a defendant like Mr. Weibel, who is objecting to those continuances and instead asserting his right to a speedy trial. *See United States v. Varella*, 692 F.2d 1352, 1358-59 (11th Cir. 1982). Other circuits, however, prescribe a totality of circumstances test for this

purpose. *See, e.g. United States v. Hall*, 181 F.3d 1057, 1062 (9th Cir. 1999) (considering "whether the delay was necessary to achieve its purpose of effectuating a joint trial" and whether there was any "actual prejudice" suffered by the defendant); *see also United States v. Messer*, 197 F.3d 330, 337 (9th Cir. 1999) (warning that the purposes of effectuating joint trials should "not give short shrift to a defendant's interest in not being prejudiced in the presentation of his own defense").

As shown above, Mr. Weibel is suffering and will continue to suffer substantial prejudice until this case is tried. As long as the shadow of the indictment looms over Mr. Weibel, his ability to earn his livelihood and his standing in the appraiser community will remain negatively affected. The likely length of the delay, well over one year, is adequate to render suspect the reasonableness of this delay. This motion, by which Mr. Weibel asserts his right to a speedy trial and seeks to sever, underlines and heightens the unreasonableness of the delay. Therefore, if severance is not granted, then Mr. Weibel's speedy trial clock should not be stopped for any days that are excluded from the 70-day period of the other co-defendants for continuances granted to them.

### III. Conclusion

For the reasons set forth above, this Court should sever Mr. Weibel's trial from that of the other co-defendants. In the alternative, the Court should order that

Mr. Weibel's speedy trial clock not be stopped for any continuances granted to the

co-defendants.

Respectfully Submitted,
/s/ Guinevere M. Moore
Guinevere M. Moore
Ajay Gupta
MOORE TAX LAW GROUP LLC
2205 W. Armitage Ave., Suite 1
Chicago, IL 60647
Telephone: 312-549-9993
guinevere.moore@mooretaxlawgroup.com
ajay.gupta@mooretaxlawgroup.com
ADMITTED *PRO HAC VICE*

Molly Hiland Parmer
Parmer Law
One Atlantic Center
1201 W. Peachtree Street NW, Suite 2300
Atlanta, GA 30309
Telephone: 404-795-5060
molly@parmer.law
GEORGIA BAR NO.: 942501

*Counsel for Defendant Clay Weibel*

Dated: This 23d day of March, 2022.

CERTIFICATE OF SERVICE

I hereby certify that the foregoing Motion to Sever Trial (With Supporting Memorandum of Law) is formatted in Times New Roman 14 pt., in accordance with Local Rule 5.1B, and was electronically filed this day with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following counsel of record:

> Brittney Campbell
> Thomas J. Krepp
> Grace Albinson
> Parker Tobin
> William Guappone
> Chris Huber
> Assistant United States Attorney
> Suite 600, Richard B. Russell Building
> 75 Ted Turner Drive, S. W.
> Atlanta, Georgia, 30303

> /s/ Guinevere M. Moore
> Guinevere M. Moore
> ADMITTED *PRO HAC VICE*

Dated: This 23d day of March, 2022.