IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CLAY MICHAEL WEIBEL,<br><br>Defendant. | CRIMINAL ACTION NO.<br><br>1:21-cr-231-TCB-CMS |

## REPORT AND RECOMMENDATION

This case is before the Court on Defendant Clay Michael Weibel's Motion to Sever Trial, pursuant to Federal Rule of Criminal Procedure 14. [Doc. 97].

### I.   BACKGROUND

On February 24, 2022, a federal grand jury returned a 135-count, 99-page First Superseding Indictment against seven individuals, including Weibel. [Doc. 28]. The Superseding Indictment alleges that Weibel was a licensed appraiser who provided appraisals of syndicated conservation easements. [*Id.* ¶ 7]. The Superseding Indictment alleges that Weibel was part of an elaborate tax-shelter scheme in which he provided fraudulently inflated valuations of the conservation easements, resulting in unwarranted tax deductions. [*Id.* ¶ 33]. According to the allegations, the final appraisal value that Weibel generated always substantially exceeded the amounts for which the easement had been acquired. [*Id.* ¶¶ 40(h), 45,

46(b)]. The Superseding Indictment alleges that instead of conducting an independent appraisal, Weibel relied upon his co-conspirators to provide the final appraisal values and the fraudulent documentation to support those values. [*Id.* ¶ 49]. The Superseding Indictment alleges that Weibel overvalued twelve of the conservation easements at issue in the case.

Weibel is charged in two conspiracy counts and twelve substantive counts as follows:

> Count One: Conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, along with all of his codefendants. [*Id.* ¶¶ 35–276].
>
> Count Two: Conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, along with four of his codefendants. [*Id.* ¶¶ 277–281].
>
> Counts Fifty-Two through Sixty-Three: Aiding and assisting the filing of false tax returns in violation of 26 U.S.C. § 7206(2). [*Id.* ¶¶ 292–293].

The Superseding Indictment contains the following additional substantive counts against Weibel's codefendants:

> Counts Three through Twenty-Six: Wire fraud against Herbert E. Lewis. [*Id.* ¶¶ 282–284].
>
> Counts Twenty-Seven through Thirty-Two: Wire fraud against Victor Smith. [*Id.* ¶¶ 285–287].
>
> Counts Thirty-Three through Forty-Eight: Aiding and assisting the filing of false tax returns against Jack Fisher and James Sinnott. [*Id.* ¶¶ 288–289].
>
> Counts Forty-Nine through Fifty-One: Aiding and assisting the filing of false tax returns against Walter D. Roberts II. [*Id.* ¶¶ 290–291].

> Counts Sixty-Four through Ninety-Five: Aiding and assisting the filing of false tax returns against Herbert E. Lewis. [*Id.* ¶¶ 294–295].
>
> Counts Ninety-Six through One Hundred Two: Aiding and assisting the filing of false tax returns against Victor Smith. [*Id.* ¶¶ 296–297].
>
> Counts One Hundred Three through One Hundred Six: Subscribing to false tax returns against Jack Fisher. [*Id.* ¶¶ 298–299].
>
> Counts One Hundred Seven through One Hundred Twelve: Subscribing to false tax returns against James Sinnott. [*Id.* ¶¶ 300–301].
>
> Counts One Hundred Thirteen through One Hundred Sixteen: Subscribing to false tax returns against Yekaterina Lopuhina. [*Id.* ¶¶ 302–303].
>
> Counts One Hundred Seventeen through One Hundred Twenty-One: Subscribing to false tax returns against Herbert E. Lewis. [*Id.* ¶¶ 304–308].
>
> Counts One Hundred Twenty-Two through One Hundred Thirty-Five: Money laundering against Jack Fisher. [*Id.* ¶¶ 309–310].

Thus, each of the defendants is charged in the Count One conspiracy, and each is also charged with individual substantive counts. The Superseding Indictment also contains a forfeiture provision against all the defendants, including Weibel. [*Id.* ¶ 311].

In his Motion to Sever Trial, Weibel states that his trial should be severed from that of his codefendants because his charged conduct is limited to preparing allegedly fraudulent and inflated appraisals for only twelve conservation easements

3

and because his alleged involvement is limited to less than four years of the conspiracy. [Doc. 97 at 7[1]].  He argues:

> A joint trial of all seven co-defendants . . . will be anything but speedy. Any such joint trial will necessarily decide all 135 counts of the indictment and will therefore entail an enormous amount of evidence, featuring complex details of convoluted transactions over almost two decades, only a tiny fraction of any of which would be even remotely related to Mr. Weibel. Already, the voluminous discovery being produced by the government has prompted some of the other co-defendants to move for and obtain continuances on pretrial deadlines. Those extensions of deadlines are bound to lengthen, and a delay of well over a year in the conduct of any joint trial is foreordained.  At that stage, this Court would have to confront Mr. Weibel's sole remaining remedy for the resulting deprivation of his speedy trial right—a motion to dismiss. Instead, Mr. Weibel is moving the Court now, and asking for the much less drastic remedy of severance. In the alternative, Mr. Weibel asks that any extensions granted the other defendants not be attributed to him for determining the time elapsed until trial under the Speedy Trial Act.

[*Id.* at 11–12].

In response, the Government argues that Weibel's motion should be denied because he has neither met his burden of establishing specific and compelling prejudice, nor explained why his case is so exceptional that this Court should not follow the general rule that defendants who are charged together be tried together.

---

[1] Weibel's Motion to Sever Trial contains five introductory pages—a cover page and a four-page table of contents—resulting in the page numbers on the brief being different than the ECF page numbers in the header. [Doc. 97].  My citations are to the ECF page numbers.  I have also used the ECF page numbers when citing to his reply brief, which also contains a cover page and a table of contents.  [Doc. 143].

[Doc. 112 at 1]. The Government contends that Weibel's speedy trial arguments are misplaced and that severance of his trial would result in duplicative trials that would waste judicial resources and create a risk of inconsistent verdicts. [*Id.*].

## II. DISCUSSION

Federal Rule of Criminal Procedure 8 provides that two or more defendants may be charged in the same indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." FED. R. CRIM. P. 8(b). In *Zafiro v. United States*, the Supreme Court considered Rule 8 and noted that:

> [t]here is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials play a vital role in the criminal justice system. They promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts. For these reasons, we repeatedly have approved of joint trials.

*Zafiro v. United States*, 506 U.S. 534, 537–38 (1993) (internal citations and quotation marks omitted).

When it appears, however, that a joint trial would "prejudice a defendant or the government," Federal Rule of Criminal Procedure 14 authorizes a district court to order separate trials. FED. R. CRIM. P. 14(a). The fact that a defendant may suffer some prejudice is not enough to justify severance, as a degree of prejudice is inherent in joint trials. *See United States v. Harris*, 908 F.2d 728, 736 (11th Cir. 1990). Where there is a risk of prejudice, district courts have the discretion to tailor the

relief to address the potential prejudice, and limiting instructions for the jury will often be sufficient. *Zafiro*, 506 U.S. at 538–39.

The Supreme Court, however, has identified two limited circumstances where the remedy for such prejudice should be severance: (1) where there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants; or (2) where a joint trial would prevent the jury from making a reliable judgment about guilt or innocence. *Id.* at 539.  According to the Supreme Court, examples of these circumstances include: where evidence of a codefendant's wrongdoing (that would not be admissible in a defendant's separate trial) could erroneously lead a jury to conclude that a defendant was guilty; where many defendants are tried together in a complex case and have markedly different degrees of culpability; where there is probative evidence of a defendant's guilt that would be admissible in a joint trial but would not be admissible in a defendant's separate trial; and where essential exculpatory evidence that would be available to a defendant tried alone would be unavailable in a joint trial. *Id.*

Here, Weibel argues that severance is necessary because of the presence of both of the two limited circumstances that the Supreme Court identified in *Zafiro*— i.e., there is a serious risk that a joint trial would (1) compromise his right to a speedy trial and (2) prevent the jury from making a reliable judgment about his guilt or innocence.  I will address these arguments in turn.

### A.     Would a joint trial compromise Weibel's right to a speedy trial?

Weibel first argues that absent severance, there is a serious risk that his constitutional speedy trial right will be compromised due to the multiple anticipated continuances that he expects his codefendants to request. [Doc. 97 at 15–23]. Weibel has not argued that there has yet been any violation of his rights under the Speedy Trial Act. The Speedy Trial Act provides detailed time limits within which prosecutors must bring the case to trial, requiring that a defendant's trial begin within seventy days of his indictment or his first appearance before a judicial officer, whichever is later. 18 U.S.C. § 3161(c)(1)). There are many statutory exclusions, however, from the 70-day limit, including "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(6). In other words, insofar as the defendant is properly joined, the reasonable delay attributable to one defendant is attributable to all. Although unusual, it is possible for a delay that does not violate the Speedy Trial Act to run afoul of the Sixth Amendment's guarantee of a speedy trial. *See United States v. Salimonu*, 182 F.3d 63, 69 (1st Cir. 1999).

In deciding whether a defendant's Sixth Amendment speedy trial right has been violated, courts evaluate four factors: (1) the length of delay; (2) the reason for delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice

caused by the delay. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The first factor—the delay—is a "triggering mechanism" for the inquiry. *Id.* at 530–31. Thus, "to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary [delay] from 'presumptively prejudicial' delay[;] . . . by definition, he cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness." *Doggett v. United States*, 505 U.S. 647, 651–52 (1992) (internal citation omitted). In this case, Weibel was charged by superseding indictment on February 24, 2022, and was arraigned on March 9, 2022. [Docs. 28, 69]. Less than three months have passed since the arraignment, far from the constitutional threshold of prejudicial delay. *See United States v. Derose*, 74 F.3d 1177, 1185 (11th Cir. 1996) (holding that an "eight-month delay is insufficient to merit a Sixth Amendment speedy trial violation inquiry"); *Young v. Crosby*, No. 8:02CV583T23MAP, 2005 WL 1205398, at *5 n.3 (M.D. Fla. May 20, 2005) (concluding that a defendant's six-month delay did not trigger a *Barker* inquiry into a constitutional claim of denial of speedy trial). Given how early we are in this case, the threshold has not yet been crossed to justify analysis of the remaining *Barker* factors. I agree with the Government that Weibel has not satisfied his burden of demonstrating that severance is appropriate under Rule 14 because any claim of an

8

anticipated *future* violation of Weibel's speedy trial rights at this time is purely speculative.

**B.     Would a jury in a joint trial be unable to render a reliable judgment?**

In addition to his arguments about his constitutional right to a speedy trial, Weibel contends that he will be prejudiced by a joint trial in several other ways, arguing that a jury will be unable to render a reliable judgment because: (1) his alleged role in the scheme is relatively minor compared to that of his codefendants, and the spillover evidence would prejudice him; (2) his "good faith" defense is necessarily antagonistic" to the defenses of his codefendants; and (3) the evidence against him is qualitatively different than the evidence against his codefendants.[2]

### *1.     Role in the Alleged Scheme and Spillover Evidence*

Weibel states that he "faces inevitable prejudice from the sheer volume of charges in the indictment, only a small fraction of which relate to him, and the almost-two-decades-long period spanned by the charged conduct, again only a brief duration of which allegedly involves him." [Doc. 97 at 13]. In his reply brief,

---

[2] Weibel also argues—in a single sentence—that a joint trial would foreclose the opportunity to obtain an exculpatory statement from his codefendants, who, he contends, "will surely invoke their Fifth Amendment privilege against self-incrimination." [Doc. 97 at 14–15]. He provides no specifics in support of this conclusory argument, and therefore has failed to make a sufficient showing to warrant severance.

Weibel points out that although the Superseding Indictment alleges three types of schemes—fraud related to the design and marketing of the tax shelters, fraud related to the appraisals, and fraud related to documentation—he is alleged to be involved in only one of those types of fraud (the appraisals). [Doc. 143 at 5–9]. He also notes that of the forty-six witnesses who were called to testify before the grand jury, only sixteen of them discussed appraisals. [*Id.* at 11].

This generalized claim of possible prejudice from a joint trial is insufficient to show that there is an actual, serious risk that the jury could not make a reliable judgment about his guilt or innocence. *See Zafiro*, 506 U.S. at 539. A defendant does not suffer compelling prejudice warranting severance simply because much of the evidence presented at trial applies only to a codefendant; the trial judge may give the jury limiting instructions to reduce the risk of prejudice. *See United States v. Blankenship*, 382 F.3d 1110, 1123 (11th Cir. 2004). The United States Supreme Court has admonished that even when a defendant can show some degree of prejudice, less drastic measures, such as limiting instructions, usually suffice as an alternative to granting a severance. *Zafiro*, 506 U.S. at 539. And the Eleventh Circuit has noted that there is a "strong presumption" that jurors can "compartmentalize evidence by respecting limiting instructions specifying the defendants against whom the evidence may be considered." *Blankenship*, 382 F.3d at 1123.

Moreover, the Superseding Indictment alleges that Weibel's role was not as limited as he might contend; Weibel is alleged to have generated false appraisals in an attempt to support more than $800 million of the total $1.3 billion in allegedly false and fraudulent tax deductions. [Doc. 28 ¶ 53]. And, according to the Government, the evidence relied on to establish the conspiracy counts and the substantive counts largely overlaps. [Doc. 112 at 10]. As an example of overlapping evidence, the Government states that the allegedly inflated appraisals that form the basis for the charges against Weibel are also evidence of the substantive wire fraud counts against Lewis and Smith. [Doc. 112 at 10].

The Eleventh Circuit has held that cases involving conspiracies are particularly suited to joint trials due to the overlapping evidence. *United States v. Walker*, 720 F.2d 1527, 1533 (11th Cir. 1983) ("The general rule is that defendants who are jointly indicted should be tried together, and this rule applies with particular force to conspiracy cases."). Weibel has not carried his burden of showing that his alleged role in the scheme or the expected spillover evidence creates specific and compelling prejudice to the conduct of his defense. Rather, Weibel's argument amounts to mere speculation or conjecture. *See United States v. Schlei*, 122 F.3d 944, 984 (11th Cir. 1997) (finding no abuse of discretion where the district court denied a motion for severance where the defendant was a member of a conspiracy,

noting that a joint trial may be appropriate even where there is "enormous disparity in the evidence admissible against him compared to the other defendants").

### 2. *The Good Faith Defense*

One possible basis for a Rule 14 severance is where codefendants assert "mutually antagonistic" or "irreconcilable" defenses, i.e., the acceptance of one party's defense precludes the acquittal of the other defendant. *Zafiro*, 506 U.S. at 537. The Supreme Court, however, has held that such defenses are not prejudicial per se, and even where they potentially create some prejudice, Rule 14 does not necessarily require severance; a limiting instruction may suffice. *Id.*

Weibel states that he plans to invoke the affirmative defense of good faith based on having reasonably relied in good faith on information supplied by one or more of his codefendants. [Doc. 97 at 14]. He states that this is "necessarily antagonistic" to the defenses of these codefendants. [*Id.*]. The Government responds, and I agree, that Weibel fails to explain why this defense is antagonistic to any defense a codefendant might assert. [Doc. 112 at 11]. Nor has he identified the defense that he expects his codefendant to raise that would necessarily preclude the jury from accepting his claim of good faith. In the absence of a showing of mutually antagonistic defenses, severance is not warranted. *See Zafiro*, 506 U.S. at 537.

### 3. *The Type of Evidence Against Weibel*

Finally, Weibel argues that the evidence against him is qualitatively different than the evidence against his codefendants. He states that as part of his good faith defense, he intends to introduce Treasury Department and IRS regulatory guidance along with professional standards of conduct promulgated by appraisal-industry organizations. [Doc. 97 at 25–26]. He notes that the Government and/or the defense may introduce expert testimony concerning the appraisals. [*Id.* at 27]. This evidence, he argues, is qualitatively different than the evidence that would be introduced concerning his codefendants' solicitation of investments and management of those investments. [*Id.* at 28].

This argument is not persuasive. As discussed above, the fact that one part of the trial will focus on appraisals while other parts of the trial will focus on other parts of the alleged conspiracy is not necessarily prejudicial. The Eleventh Circuit has held that "[a] defendant does not suffer compelling prejudice simply because much of the evidence presented at trial is applicable only to his codefendants." *Walker*, 720 F.2d at 1533. As explained above, the trial court can instruct the jury that each offense and each defendant should be considered separately, which will alleviate the risk of any actual compelling prejudice. In the absence of a showing that there is a specific risk that the jury will be unable to make an impartial and fair judgment with respect to Weibel individually, the preference for alleged coconspirators to be tried

jointly is appropriate, especially here where the appraisals appear to have been critical to the scheme. *See Skillern v. United States*, No. 20-13380-H, 2021 WL 3047004, at *16 (11th Cir. 2021) (noting the preference for joint trials, "particularly in conspiracy cases"); *United States v. Kopituk*, 690 F.2d 1289, 1318 (11th Cir. 1982) ("Because it was necessary to prove the existence of the criminal enterprise and underlying conspiracy with respect to each defendant, a substantial portion of the government's proof would necessarily have had to be repeated for each defendant who was granted a separate trial. The interest of judicial economy was thus well-served by proceeding with a joint trial."). For all these reasons, I will recommend that Weibel's trial not be severed from that of his codefendants.

### C. Alternative Remedy

Finally, as an alternative to severance, Weibel requests that the Court not attribute to him periods excluded from any of his codefendants' speedy trial clocks. [Doc. 97 at 28–29]. Weibel asserts that it is not reasonable to attribute to him the delay that his codefendants request. [Doc. 97 at 30].

As discussed above, the Speedy Trial Act requires that a defendant's trial begin within seventy days of his indictment or his first appearance before a judicial officer, whichever is later. 18 U.S.C. § 3161(c)(1). There is an exclusion, however, for the "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance

14

has been granted." 18 U.S.C. § 3161(h)(6).  Excludability under this provision is not automatic; the period of delay must be reasonable.  *See Henderson v. United States*, 476 U.S. 321, 326–27 (1986).

Courts have interpreted this section broadly to provide trial judges with flexibility to deal with complex or unusual cases. *See, e.g.*, *United States v. Murray*, 154 F. App'x 740, 746 n.8 (11th Cir. 2005) (holding that there was no violation of the statute where the district court granted a lengthy continuance of more than two years because a codefendant fought extradition to the United States).  In determining whether a delay under this provision of the Speedy Trial Act is reasonable, courts evaluate the totality of the circumstances, including the extent to which the defendant would be prejudiced and the sheer length of the delay. *United States v. Davenport*, 935 F.2d 1223, 1236 (11th Cir. 1991).

Thus far, the only delay caused by Weibel's codefendants is due to a continuance that I granted to give the parties time to review the voluminous discovery and to prepare pretrial motions.  Section 3161(h)(7) of the Speedy Trial Act provides that periods of delay resulting from continuances may be excluded in computing the time within which the trial must commence, but only if the ends of justice served by granting the continuance outweigh the best interest of the public and the defendant in a speedy trial.  *See* 18 U.S.C. § 3161(h)(7).  Here, the ends of

15

justice are clearly served by allowing the codefendants an opportunity to review the discovery and prepare their motions.

In light of Sections 3161(h)(6) and (h)(7) of the Speedy Trial Act, my decision to grant the continuance and exclude time was legally compelled and necessarily reasonable. At this early stage of the case, any argument that a delay is unreasonable is wholly unsupported. *See United States v. Jackson*, 544 F.3d 1176, 1186 (11th Cir. 2008). For this reason, I will recommend that Weibel's alternative request for relief be denied.

## III. CONCLUSION

For the foregoing reasons, **I RECOMMEND** that Weibel's Motion to Sever Trial [Doc. 97] be **DENIED**. This 26th day of May, 2022.

_____
CATHERINE M. SALINAS
UNITED STATES MAGISTRATE JUDGE