IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JACK FISHER; HERBERT LEWIS; YEKATERINA LOPUHINA; WALTER DOUGLAS ROBERTS, II; JAMES SINNOTT; VICTOR SMITH; and CLAY MICHAEL WEIBEL,<br><br>    Defendants. | CRIMINAL ACTION FILE<br><br>NO. 1:21-cr-231-TCB |

**O R D E R**

This case comes before the Court on the motion [225] of Defendant Victor Smith, as adopted [252] by Defendant Herbert Lewis, for a bill of particulars; Lewis's motion [317] for a bill of particulars;[1] and Defendant Walter Roberts II's motion [289] for a bill of particulars.

---

[1] Lewis's "motion" [317] is merely an adoption of Smith's motion for a bill of particulars.

This case also comes before the Court on Defendant James Sinnott's motion [295] to dismiss count two of the superseding indictment for wire fraud conspiracy.

## I.   Background

Defendants face various tax-related charges in the Northern District of Georgia. Defendants allegedly created illegal tax shelters whereby high-income taxpayers claimed unwarranted and inflated charitable-contribution tax deductions in connection with the donation of conservation easements.

On February 24, 2022, a grand jury returned a 135-count first superseding indictment against the seven Defendants for fraudulently inflating the valuation of syndicated conservation easements as a tax shelter tactic.

On August 5, Smith filed a motion for bill of particulars. On August 12, Lewis adopted Smith's motion in full. On October 3, Roberts filed his motion for a bill of particulars. The motions seek additional information that Defendants allege should have been included in the superseding indictment.

On October 3, Sinnott filed a motion to dismiss count two of the superseding indictment for wire fraud conspiracy. He argues that the count should be dismissed for failure to state a claim under Federal Rule of Criminal Procedure 12(b)(3)(B)(v) because the Government failed to "sufficiently allege a wire fraud conspiracy . . . ." [295] at 1.

## II. Discussion

### A. Motions for a Bill of Particulars

Federal Rule of Criminal Procedure 7(c) requires that an indictment provide "a plain, concise, and definite written statement of the essential facts constituting the offense charged" and a citation to the statute that the defendant is alleged to have violated. FED. R. CRIM. P. 7(c)(1). Where an indictment does not conform to this standard, a defendant may "move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits." FED. R. CRIM. P. 7(f).

A district court is vested with broad discretion in deciding whether a bill of particulars should be granted. *United States v. Cole*, 755 F.2d 748, 760 (11th Cir. 1985) (citations omitted).

The Eleventh Circuit has noted that a bill of particulars serves three purposes: "to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." *United States v. Warren*, 772 F.2d 827, 837 (11th Cir. 1985) (citations omitted).

A defendant bears the burden of proving that the information requested in his motion for a bill of particulars is necessary and that he will be prejudiced without its production. *United States v. Bickers*, No. 1:18-cr-98-SCJ-LTW, 2019 WL 7559292, at *7 (N.D. Ga. Sept. 17, 2019), *report and recommendation adopted*, 2019 WL 5587050 (N.D. Ga. Oct. 30, 2019).

Defendants may not use a bill of particulars to obtain information that they already have through the indictment and discovery. *United States v. Davis*, 854 F.3d 1276, 1293 (11th Cir. 2017); *see also United States v. Holzendorf,* 576 F. App'x 932, 935 (11th Cir. 2014).

Moreover, a defendant cannot successfully move for a bill of particulars in order to "force the government into divulging its

4

prosecution strategy." *United States v. Maurya*, 25 F.4th 829, 838 (11th Cir. 2022).

Nor should a bill of particulars "be used to compel the government to provide the essential facts regarding the existence and formation of a conspiracy." *United States v. Rosenthal*, 793 F.2d 1214, 1227 (11th Cir. 1986). In an indictment for conspiring to commit an offense in which the conspiracy is the "gist" of the crime, it is "not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy or to state such object with the detail which would be required in an indictment for committing the substantive offense." *Wong Tai v. United States*, 273 U.S. 77, 81 (1927) (citations omitted).

### 1. Smith's Motion for Bill of Particulars

Smith's motion requests three categories of information: (1) information regarding the formation of the alleged conspiracy; (2) information regarding Smith's "knowing and voluntary participation" in the alleged conspiracy, [225] at 10; and (3) specific facts and evidence underlying Smith's alleged participation in the

scheme and the "overt acts" the Government intends to prove at trial. [282] at 7.

As the Court previously held, "the superseding indictment is very clear as to the underlying agreement for each conspiracy charge as well as the relevant intent of the conspiracy." [311] at 8.

Further, Smith's argument is entirely foreclosed by Eleventh Circuit precedent. A bill of particulars may not "be used to compel the government to provide the essential facts regarding the existence and formation of a conspiracy." *Rosenthal*, 793 F.2d at 1227. Accordingly, Smith's request for information regarding the formation of the alleged conspiracy will be denied.

Smith also asks for information regarding his "alleged knowing and voluntary participation in the charged conspiracy to defraud the United States" and specific evidence about several of the "overt acts" of the alleged conspiracy. [225] at 8–9. This is little more than an impermissible and premature request for the Government's exhibit list.

A bill of particulars should not "be used as a weapon to force the government into revealing its prosecution strategy." *Maurya*, 25 F.4th

at 838. Defendants cannot "compel the government to detailed exposition of its evidence or to explain the legal theories upon which it intends to rely at trial." *Id.* (quoting *United States v. Burgin*, 621 F.2d 1352, 1359 (5th Cir. 1980)).

Similarly, a bill of particulars should not be used to compel the Government to "provide defendants with all overt acts that might be proven at trial." *Rosenthal*, 793 F.2d at 1227 (citation omitted).

The 99-page superseding indictment is more than sufficient to inform Smith of the charges against him, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense.[2] Accordingly, Smith's motion for a bill of particulars, as adopted by Defendant Lewis, will be denied.[3]

---

[2] Additionally, extensive discovery has been conducted in this case, and the Government has provided Smith with ample information about the alleged conspiracy, its formation and intent, and the alleged overt acts. This eliminates any need for a bill of particulars because Defendants are not "entitled to a bill of particulars with respect to information which is already available through other sources such as the indictment or discovery and inspection." *Rosenthal*, 793 F.2d at 1227 (citing *United States v. Colson*, 662 F.2d 1389 at 1391 (11th Cir. 1981)).

[3] Lewis's separate motion for a bill of particulars, which simply wholesale adopts Smith's motion and includes no additional argument, will also be denied.

### 2.     Roberts's Motion for Bill of Particulars

Roberts's motion asks for specific evidence and information regarding (1) the appraisals he allegedly inflated; (2) the proper appraisal value for each property; (3) the method he allegedly used to inflate the appraisals; and (4) how the purchase prices of the subject properties are relevant to the allegedly inflated appraisal values.

The bulk of Roberts's motion is a thinly veiled attempt to argue that the case against him should be dismissed.[4] The remainder of the motion is an impermissible request for the Government to divulge its evidence and prosecution strategy above and beyond the detailed superseding indictment. For those reasons, his motion will be denied.

Roberts inexplicably asserts that he is unaware of the appraisals he allegedly inflated. [289] at 6 ("First, the indictment fails to allege which specific appraisals Mr. Roberts fraudulently inflated."). The superseding indictment lists the six allegedly inflated appraisals

---

[4] *See, e.g.*, [289] at 3 ("the indictment fails to attribute any illegal conduct to Mr. Roberts.").

associated with each tax shelter that is the subject of the conspiracy and false return counts under which he is charged. *See* [28] ¶ 53.

Similarly, Roberts asks the Court to require the Government to provide the proper appraisal value for the subject properties. As the Court previously held, "[n]one of the charges require the Government to prove such a value at trial." [311] at 15 n.8 (citing *United States v. Kaiser*, 893 F.2d 1300, 1305 (11th Cir. 1990)). "[Roberts] has not carried his burden of proving that he is entitled to or will be prejudiced without this information." *Id.* at 10.

Roberts then asks this Court to order the Government to describe the method he allegedly used to inflate each appraisal. Rather than requesting a bill of particulars, Roberts should look at the superseding indictment where the methods are described in detail. *See* [28] ¶ 50(a)–(f). The Court once again notes that the Government is not required in an indictment to detail the evidence it intends to put on at trial, nor is it required to provide a detailed exhibit list or divulge its trial strategy. *See Maurya*, 25 F.4th at 838.

Finally, Roberts asks the Court to require the Government to explain "how the purchase price of each of the subject properties is relevant to the alleged inflated appraisal value." [289] at 3. He goes on to assert that the purchase prices "are irrelevant" and that it "is not immediately apparent what these allegations add to the indictment." *Id.* at 8. These are plainly legal arguments against Roberts's prosecution that are better suited for a motion to dismiss.[5]

The 99-page superseding indictment is more than sufficient to provide Roberts with notice of the charges against him, allow him to prepare his defense, minimize surprise at trial, and enable him to plead double jeopardy in the event of a later prosecution for the same offense. *See Anderson*, 799 F.2d at 1441 (citation omitted). Additionally, the Government has provided voluminous discovery that provides Roberts with much of the information he seeks in a bill of particulars.

---

[5] The Court also notes that the potential relevance of the purchase price to the fair market value of a property is clear, and the Government certainly needs not provide such an explanation in the indictment. A defendant has a right to know the offense with which he is charged. He does not have the right to know the exact strategy the Government will use to prove such a charge. *See Maurya*, 25 F.4th at 838.

10

Accordingly, Roberts's motion for a bill of particulars will be denied.

### B. Sinnott's Motion to Dismiss Count Two for Wire Fraud Conspiracy

Federal Rule of Criminal Procedure 12(b)(3)(B)(v) permits a criminal defendant to bring a motion before trial that alleges a defect in the prosecution, including the Government's "failure to state an offense." The Court must dismiss an indictment only where there is "an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." *United States v. deVegter*, 198 F.3d 1324, 1326–27 (11th Cir. 1999) (quoting *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987)). This determination of the indictment's sufficiency must take all allegations in the light most favorable to the Government.

In this analysis the Court must look only to "the facial sufficiency of the allegations of the indictment for purposes of the Rule 12(b)(3)(B) analysis." *United States v. Sharpe*, 438 F.3d 1257, 1259 (11th Cir. 2006). "A motion to dismiss an indictment targeted at the substance of

the offense may therefore only be granted if there is a legal infirmity in the indictment." *United States v. Ferguson*, 142 F. Supp. 2d 1350, 1353 (S.D. Fla. 2000) (citation omitted).

As both parties agree, an indictment is sufficient if it "(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *United States v. Jordan*, 582 F.3d 1239, 1245 (11th Cir. 2009) (per curiam) (quoting *United States v. Woodruff*, 296 F.3d 1041, 1046 (11th Cir. 2002)).

### 1. The Sufficiency of the Indictment

Sinnott argues at a general level that the indictment is not sufficiently detailed on the wire fraud conspiracy count. However, the Government correctly notes that the specificity required for substantive offenses does not apply to conspiracy charges. "In charging such a conspiracy 'certainty, to a common intent, sufficient to identify the offense which the defendants conspired to commit, is all that is'

necessary." *Wong Tai*, 273 U.S. at 81 (quoting *Williamson v. United States*, 207 U.S. 425, 447 (1908)).

Of course, for a substantive offense, the indictment must include each element of the underlying offense. Relevant here, to prove wire fraud conspiracy under 18 U.S.C. § 1349, the Government must show "(1) a conspiracy to commit wire fraud; (2) knowledge of the conspiracy; and (3) that [Sinnott] knowingly and voluntarily joined the conspiracy." *United States v. Feldman*, 931 F.3d 1245, 1257 (11th Cir. 2019) (internal quotation marks and citation omitted).

Here, the Government has adequately alleged the elements of wire fraud conspiracy. As this Court already stated with respect to Defendants Fisher and Sinnott's motions for a bill of particulars, the conspiracy charges (including the one at issue here) are "thoroughly detailed," including the agreement, design, and object of the conspiracies. *See* [311] at 7. Indeed, "[t]he indictment is more than sufficient to inform [Sinnott] of the charge against him, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." *Id.* at 8 (citation

13

omitted). Therefore, for the same reasons previously discussed, the Court finds Sinnott's motion to dismiss the wire fraud conspiracy count for lack of specificity unconvincing.[6]

### 2. Money and Property Involved in the Conspiracy

Sinnott also argues against the indictment for its failure to properly allege the money and property involved in the conspiracy. He argues that the only money involved in the indictment is his alleged receipt of approximately $6,000,000 in fees and commissions from the partnerships. *See* [28] ¶ 67. He contends that the indictment "does not claim there are any victims of the wire fraud other than intimating the government was somehow a victim. Yet the government did not pay any fees or commissions." [295] at 4. Therefore, so the argument goes, the indictment is faulty as a matter of law. This argument lacks merit for two reasons.

---

[6] Sinnott's reply states that the indictment makes it "impossible for [him] to later plead double jeopardy in a future prosecution for the same offense." [367] at 2. This argument was not raised in the motion to dismiss. Nevertheless, as discussed above, the indictment is more than sufficient to avoid double jeopardy concerns. And as discussed below, any issues with the indictment's identification of the victim and/or money or property involved in the conspiracy lacks merit. Therefore, this briefly raised argument does not change the result.

First, while Sinnott implies fees and commissions are the only money or property involved, the Government accurately notes that the indictment also includes the IRS as a victim of the conspiracy through lost tax revenue. *See, e.g.*, [28] ¶ 279 (explaining how the object of the conspiracy was, in part, to "defraud the IRS"). This alone is sufficient money and property for purposes of indicting wire fraud conspiracy. *See Pasquantino v. United States*, 544 U.S. 349, 356 (2005) (explaining how "uncollected" tax is "property" for purposes of wire fraud).[7]

Second, Sinnott argues that the indictment fails because the alleged conspiracy does not involve deceiving the same entity (the IRS)

---

[7] Relatedly, Sinnott also contends that the indictment did not explain how the conspiracy impacted the IRS or incorporate Sinnott's tax returns into the conspiracy. But the Government accurately summarizes how Sinnott's contentions either misstate the indictment's focus or plainly contradict its text:

> [The indictment] explain[s] that Sinnott and his co-conspirators: (1) created a Tax Shelter; (2) used the Tax Shelter to purchase ownership interest in a Property Company that owned vacant land; (3) marketed and sold tax deductions to clients by selling units in the Tax Shelter to clients; (4) obtained fraudulently-inflated appraisals of the donations; (5) caused the Property Company to donate land or a conservation easement over the land; and (6) caused clients in the Tax Shelters to claim fraudulent deductions on their tax returns filed with the IRS.

[327] at 10 (citing [28] ¶¶ 30–33; 38–41).

15

as the individual(s) whose money was the object of the scheme (the investors).[8] This argument is termed the "convergence theory" of wire or mail fraud. *See, e.g.*, *United States v. Christopher*, 142 F.3d 46, 54 (1st Cir. 1998) (explaining how those using this argument believe that there is an "invariable requirement that the person deceived be the same person deprived of the money or property by the fraud").

To date, at least the First, Second, Fifth, Seventh, and Eighth Circuits have rejected the convergence theory—with only the Ninth Circuit in disagreement. *See id.*; *United States v. Greenberg*, 835 F.3d 295, 305–07 (2d Cir. 2016); *United States v. McMillan*, 600 F.3d 434, 449–50 (5th Cir. 2010); *United States v. Seidling*, 737 F.3d 1155, 1160–61 (7th Cir. 2013); *United States v. Blumeyer*, 114 F.3d 758, 767–68 (8th Cir. 1997). *But see United States v. Lew*, 875 F.2d 219, 221–22 (9th Cir.

---

[8] This argument begs the question: how can Sinnott argue that there is an asymmetry between the entity deceived and the entity defrauded? He cannot. Indeed, as stated above, the indictment explains how (separate and apart from the fees and commissions from investors) the IRS was impacted from lost tax revenue vis-à-vis fraudulent deductions. This argument is therefore moot; however, for completeness purposes, the Court nonetheless explains why it also lacks merit.

1989). However, neither party cites (nor is the Court aware of) any Eleventh Circuit authority discussing the issue.

Faced with the split in authority, this Court will side with the majority of circuits and hold that Sinnott's argument based on the "convergence theory" of fraud lacks merit. The substantive statute behind wire fraud conspiracy is 18 U.S.C. § 1343, which criminalizes "any scheme or artifice to defraud, or for obtaining money or property by false or fraudulent pretenses . . . ." Best stated by the Second Circuit in *Greenberg*, "[n]othing in these statutory texts . . . suggests that the scheme to defraud must involve the deception of the same person or entity whose money or property is the objective of the scheme." 835 F.3d at 306. Indeed, the text "is broad enough to include a wide variety of deceptions intended to deprive another of money or property . . . ." *Id.* (quoting *Christopher*, 142 F.3d at 54).

This Court agrees. To hold otherwise would read a limitation into a criminal statute that is not warranted by its text. And such a holding would de-criminalize fraudulent behavior based on splitting the crime among multiple parties. That would lead to an unjustified, anomalous

17

result, and the Court will not dismiss the wire fraud conspiracy count based on Sinnott's argument.

### III. Conclusion

For the foregoing reasons, Defendant Victor Smith's motion [225] for a bill of particulars, as adopted [252] by Defendant Herbert Lewis, is denied; Lewis's motion [317] for a bill of particulars is denied; Defendant Walter Roberts II's motion [289] for a bill of particulars is denied; and Sinnott's motion [295] to dismiss count two of the superseding indictment for wire fraud conspiracy is denied.

IT IS SO ORDERED this 6th day of December, 2022.

_____
Timothy C. Batten, Sr.
Chief United States District Judge